Good morning, your honors. May it please the court, my name is Lia Jamilova. I represent the petitioner in this case. This case basically resides on one issue. How much of that stuff happening to you is enough for post-persecution, for pattern or practice, for disfavored group, and for well-established future persecution? And the judge in this case found that nothing is enough. Doesn't matter unless you are physically harmed, nothing will matter. So in this case we have multi-generational experience of being called racial slurs. We have teachers telling a child that the child will never amount to anything because of the ethnicity, but the cleaning jobs. They would not, the petitioner would not get officially only under the table even though he had the right for work. He had authorization, he was a citizen. We have slurs from neighbors, threats from neighbors, puppy poison by neighbors, construction materials put on fire by neighbors, police refusal to help investigate, and racial slurs. Government refusing to delay to issue a passport and racial slurs. And then refusal to help when the father disappeared plus racial slurs. Now if you take each of them separately like the judge did in this case, sure, it's unpleasant. It's, you know, harassment, discrimination. However, if you put it together, then every day of your life you're pointed out your race and you're being deprived of something every single day. You, your child, through not only your lifetime but already your child's lifetime. And it didn't start these days, it started before. So we have decades of the same happening. We have it happening all over the country and still. In fact, excuse me, counsel, you have it happen in different countries. Isn't it correct that when Mr. Modok, am I pronouncing his name correctly, Mr. Modolikov? Yes, it's a spasiba, thank you. But isn't, isn't it correct that when he was in Kyrgyzstan he was mistreated for being Russian and when he lived in Russia he was mistreated for being a Kazakh? That's mistreatment in two different countries for two different reasons as to two different ethnic biases, correct? Correct. So we got it at both ends. Correct. But that, I don't know that it helps you in this case and in terms of the issues he's faced in terms of living in two different countries and facing slurs in both countries. So basically he is between a rock and a hard place. Yeah. That's very true. However, the issue in this case is only what happened in Russia because he did not have, he does not have already citizenship in other countries so he only has citizenship in this country. I do understand that for some reason at the lower levels it was argued whatever happened to to him in other country but in Russia but it's not an issue in this case. It's only about Russia. Well clearly discrimination by itself is not the same as persecution under the analysis, correct? Absolutely. And I think on your list of things, unless I missed it, you left out stealing the meat from his bowls by the, by the government officials. Yes, that also happened. Yeah. So that also shows you it's everywhere, all the time, every day. So would that be enough? Would that be enough if you were called name every single day? If I just replace what happened to him with what was happening in this country during the segregation time, I don't think any of us would have a question, is it just mere discrimination and harassment or is it a bigger issue, a systematic issue? But when we replace it with a Kazakh person in Russia for the immigration judge, somehow it's just unpleasant experiences. Sure it is unpleasant but it doesn't contradict the fact that it may be persecution. So what cases do you have that we can set against the facts of this case that tell us that this rises to the level? So it's a very clearly unpleasant treatment and it's very clear that the ground for the treatment is a forbidden ground. So the only issue is, as you stated, is this bad enough? So what cases do we have to compare in terms of what's bad enough? Sure, I understand what you're asking. So what I would say, case law is one thing, but common understanding of things in life, I think even more important in this case. For example, if we talk about Jews in Germany 1930s, is it discrimination or is it already persecution? If we talk about black African-Americans in this country during the segregation... No, I understand that. I asked you something different. I'm asking for cases because, you know, we deal with cases and the standards set by the cases and the factual kaleidoscope of the cases. I get it. There's nothing that's going to be directly on point. But what are your best cases to compare to this one that says this rises to the level of persecution? Well, the very core cases, I want to say of asylum law. Sorry, I'm blanking right now. The case that established that race can be the basis for past persecution, that it's a protected ground. I think that's enough. No, I understand that you've got the protected ground. Yeah. No, but the issue is how bad is the treatment? The persecution itself. Yeah, I understand what you're asking. Sorry, I'm spacing right now on the name of the case. I will get to it at some point. That's okay. Don't worry. But we did list it in the brief. Well, perhaps to help you with Judge Fletcher's question, you do, first of all, as to his wife and two daughters, they only obtained derivative rulings under asylum. So asylum is the whole angle here. I mean, this is the crucial point. And in terms of, given that the Board of Immigration judges without an opinion, then in that case, the opinion becomes the final agency action, and it's reviewed for substantial evidence, correct? Correct. So in terms of the analysis, first, in terms of, say, past persecution, and then ethnic discrimination and harassment, where is the past persecution in the context, say, of economic deprivation? I know that there's one incident of economic hardship, but that's literally it. He has found ongoing employment, even in Russia, he was able to gain employment with respect to unofficial jobs, but he was definitely able to gain employment. So I don't know that you really have strong grounds in terms of past persecution. So your thrust is as to ethnic discrimination and harassment, correct? I would disagree politely in this matter. What am I missing on past persecution? So we are talking about, yes, you can find a job, a job. We're not saying it's going to be a good job that provides you well. It's going to be saying you can merely make a living, and merely making a living by cleaning jobs or construction jobs under the table, that's not enough. The standard is not... Well, these were unofficial jobs that state-sponsored construction companies, correct? That's correct. And he had no difficulty getting employment in that fashion, correct? No, he did have difficulty because... I'm not saying as to the under-the-table employment, he was easily able to get that, apparently. Sure, under-the-table employment, yes. However, a person should be entitled to official employment when he is authorized to work, and when official employment provides him social protections, which under-the-table does not provide. Like in this case, when he was injured, he was kicked out from the job, and was not able to get any compensations, and was just fired because there are many like you. So, a job, sure. However, that's not a job that a person should be able to get, officially, if he is a Russian citizen in Russia. And that, I believe, is a post-persecution, because it doesn't happen once. It happens also not... Well, this court has ruled previously that economic deprivation that constitutes a threat to life or freedom, may be persecution. But getting jobs under the table represents a threat to life or freedom for him? In conjunction with everything else, I believe it does rise to the persecution, because we're not... That's exactly what the judge did. He only took that issue alone, and looked at it, and said, well, not enough. Here, you can get a job under the table. However, we're taking it all together with the rest of the experiences that he had in Russia, with government calling him names, government refusing to provide services, and yada, yada, yada. Are there any other instances, besides the one that Judge Fletcher noted, in terms of taking the best bull meat, and calling him a churka? That was the slur, calling him a churka, correct? And then he has complained about failing to conduct an autopsy as to his father, and he has allegations about the death of his mother. Are there any other specific instances of any kind of government acquiescence here? Yes. They delayed the issuance of the passport, and also called him the same slur. And the schools are also state schools. So calling him names when he was a child, calling his child names at school, already constitutes action by the government toward him. And the police refused to investigate what happened to his dog, and what happened to his construction materials. So that also tells you how they treat him. And for the future purposes of persecution, I believe that judge did not look... Looked at the factors that have nothing to do with him. You can go back and relocate. Sure, he can relocate. He's gonna face the same treatment if he relocates. His sister is safe. Sure, she is safe. However, we're not talking... He's not Navalny. It's not like the government is gonna go after family members of the people they discriminate racially and ethnically. That's just a different category of discrimination and persecution. That factors just do not apply here. I do believe that... Actually, a little over time, but I'll put a minute back on the clock so that you can have a little rebuttal. Good morning, Your Honors. Good morning. Sonia Sarge-Kirksick on behalf of the United States Attorney General. The court should deny the petition for review. First, Mr. Moldavidov is not compelled reversal of the agency's denial of asylum and withholding of removal. As an initial matter, the IJ reasonably and properly concluded that Mr. Moldavidov's past experiences of discrimination and harassment, when considered together with his financial difficulties, did not rise to the level of harm required to meet the persecution standard. Before I get into the facts, I will make a brief note about the standard of review, which my colleague agrees is substantial evidence. We did discuss in our brief that there is some debate going on, excuse me, within some case laws and concurrences in the circuit regarding what the standard of review is. And notwithstanding that debate here, substantial evidence applies. Well, the question really isn't substantial evidence in the sense of burden of proof. The facts are, I think, undisputed. I mean, the IJ accepts the testimony. We treat it as true. And the question is, okay, applying the law to the facts that we accept as true. Isn't that what we're doing? Well, yeah, I would push back on that a little bit, Your Honor. I think that the IJ did discuss in his decision how the evidence did not meet the burden of proof. I understand that. But substantial evidence usually is a question of what do we believe and what don't we believe. But here, I don't think anything is disputed. I disagree. I think that there are things that are disputed, as the immigration judge pointed out in his decision. You know, even accepting that the job that Mr. Moldavmedov got with the state-run construction agencies was an unofficial job, there wasn't, on page 78, he notes, there wasn't really any information provided about what unofficial versus official means. We don't really know. And there are other examples in his decision. The IJ noted on page 77 that his injury at work, you know, he was injured. We can accept that. However, it's still unclear exactly what the impact of that was. What was the, you know, for example, how much were the medical bills? What were the dollar amounts? How much was his unofficial salary versus what his official salary would have been? There's a lot of things about what happened to him that were not sufficiently fleshed out, I think. And the IJ did rely on that. In terms of future prosecution, the one issue in terms of it being a disfavored group, did the immigration judge make any clear findings on that point in terms of being a disfavored group? The IJ did not. Because it seems to me that there's, the matter of economic discrimination, the record seems to have a great deal of information in terms of against migrants generally, and it happens to include Kazakhs. But in terms of the it seems to me from, I can see from the record, that's deficient there. There was not any indication, but I'm not sure if what, did the immigration judge really make any finding as to that the Kazakhs, if I'm pronouncing that correctly, were more disfavored or pulled out as opposed to other Russian biases against other migrants, I guess. Just to clarify, Your Honor, you said something about the IJ's decision being deficient or the record being deficient? No, I'm asking if the immigration judge made any clear finding on the issue of a disfavored group. He did not. I will say as a threshold matter, the petitioner did not cite, and I did not find, anything in the country conditions evidence regarding Kazakhs in particular. There was some information about migrants, although the IJ noted Mr. Moldachmedov is a Russian citizen, and so whether he could be categorized as a migrant is not clear. And then there also were sort of vague assertions made to the IJ regarding non-Russian ethnicity, but again, that's an extremely large and broad group. However, to answer your question, the IJ did not get into disfavored group. He did discuss pattern or practice. As the Court is aware, there are two ways to establish a objectively reasonable fear of persecution in the regulations. The regulation is 8 CFR 1208.13b to Romanet 1. The first way is the petitioner show that he will be singled out for harm, and the second way that's identified in the statute is they can show that they're a member of a group that is subject to a pattern or practice of persecution. The disfavored group, and I think it's really important to remember that the disfavored group analysis falls under that first category, the singled out category of the analysis, because all that the disfavored group analysis does is allow the petitioner a slightly lower burden of proof in terms of showing that they will be singled out for persecution in the future. Here, there was no such evidence that the persecutors, the wrongdoers in the past, none of them were identified by name. There are no particular persecutors identified in the future. There were no specific threats that were reported by Mr. Moldachmedov in terms of, if you come back here, we will find you and do this and that. There's no evidence showing that he will be subject to that kind of specific harm. And so in that regard, the IG did address that evidence and did engage in that analysis, and so it wasn't necessary for him to go into the disfavored group piece of it because the burden, albeit lowered, they didn't even get to the threshold where that would kick in, I guess, is what I'm trying to say. And then just one brief note, again, about the standard of review. Mixed questions of law and fact, where the facts are undisputed, are considered by the Supreme Court, as we all know, as questions of law. However, what the Supreme Court has also acknowledged in Wilkinson most recently is that every type of question of law is not subject to de novo review, and it is still subject, as Wilkinson said, and as we state in our brief, to a deferential standard. And that standard goes back to Elias Zecharias, which is still good law, where the inquiry that the court engages in isn't to put itself into the shoes of the agency and do its job over again. Rather, it's to determine whether the record compels reversal. And so, you know, regarding the economic persecution, for example, that Mr. Moldachmedov, I'm sorry, the economic difficulties that Mr. Moldachmedov experienced do not rise to the level of persecution. We can see that on this record here, and we can also see that when we look at this court's case law. And just some examples include the case Hay, 749 F. 3rd, 792 at 796. This was a farmer. The petitioner was a farmer. He was subject to a very large fine, and he could only farm for three months out of the year, but was able to get employment and make some kind of living, you know, with other work the rest of the year. Another case is Hussain v. Rosen, 985 F. 3rd, 634, where, and this again was sort of a combination of, it also involved the burden of proof, because while the petitioner's jewelry store and business had been burned down, not enough evidence was submitted regarding exactly what the impact of that was on his livelihood. And he was, and the evidence that there did exist showed that he was able to keep working. And you juxtapose that with a case where economic persecution was found, which is Babala, 367 F. 3rd, 1067, where the petitioner was a fisherman who was the subject of incessant threats and violence by Israeli Marines. And, you know, I think that this case certainly falls into the former category of cases. And then I'll just respond. I'll use my remaining time to quickly respond. The IJ here did engage in a cumulative analysis. He said so explicitly on pages 78 and 80 of the record. I think that asserting a risk of even discrimination and harassment all over Russia by everyone is casting much too broad a net. You know, that would just, that's just too, too broad of allegations in order to establish the claim. And the last thing I would say is that the judge did not only decide this case based on a lack of physical harm. As I've explained, he really did consider each individual incident and then consider them together as he should have. Thank you, Your Honors. All right. Thank you, Counsel. I would like to point out as a rebuttal that we are not only talking economic hardship. Economic hardship is just one of the things we're taking. Also, how government treats people who are non-Russian ethnically. We're talking about how they're commenting on them and so forth. So cumulatively, even though the judge did say he considered it all together, just saying it is not enough. He has to actually talk about what about all together, because what we have in his decision, this, not enough, this, not enough, this, not enough. And then I considered everything cumulatively. It's not enough just to say I did. You have to actually do it. And he didn't do it. What are the considerations of cumulative evidence, though, that there is a great deal of discrimination against all kinds of ethnic groups in Russia, migrants, not only in terms of economic deprivation, but even in terms of country conditions? The track record is not good in Russia with respect to many minorities and many people. That's really the problem you have here, isn't it? Not really. It's not really just pulled out as to those from Kyrgyzstan or Kazakhs. It's pervasive. It's true as to Armenians, for example. Correct? Not exactly. If we talk historic perspective, why it's happening, then you will be able to see, and the country condition do show it, that it's mainly Central Asians and Caucasus people. So it's based on appearance. It's the same as if an American goes to Russia, he's not going to be discriminated against because he's white in appearance and indistinguishable from a Slavic person. So it's whoever does not look Slavic. And just so happened that it's either Central Asian or Caucasus, people from Caucasus areas, Chechens and so forth. So there are very specific groups of people in Russia who are being discriminated ethnically against. So it's very specific. It's not super broad. And lastly, we need to look at historic perspective. So what happened was Central Asia was a Russian colony. So people of that appearance, they are considered historically as other and less than, because they're being colonized. They were less educated, less cultured, and so on. So that's the basis of what we're seeing today happening in Russia. And that's what happens all over Russia. And that's what happens both by the government and by the society. Sorry, I'm over my time. Thank you. No problem. Thank you very much, counsel, to both sides for your argument. The matter is submitted.
judges: FLETCHER, NGUYEN, Bennett